UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-60099-CIV-SEITZ/O'SULLIVAN

LOUISE EXIME,

    Plaintiff,

v.

E.W. VENTURES, INC. and KEVIN HAGENSTAD,

    Defendants.
_____/

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court on Defendants E.W. Ventures, Inc. ("E.W. Ventures") and Kevin Hagenstad's Motion for Summary Judgment [DE-28]. This labor dispute arises from alleged wage violations at a local dry cleaning business. Plaintiff Exime filed a one-count Complaint seeking recovery under the Fair Labor Standards Act (the "FLSA") [DE-1]. Defendants move for summary judgment on three grounds: (1) Plaintiff has failed to prove the essential element of "individual coverage" or "enterprise coverage" necessary to invoke FLSA relief; (2) Defendant Hagenstad is not individually liable under the FLSA; and (3) Louise Exime is an improper "serial plaintiff." After carefully reviewing the Parties' papers, the record, and pertinent legal authorities, the Court finds that Plaintiff has established a disputed issue of material fact with regard to enterprise coverage, thereby subjecting Defendants to potential joint and several liability under the FLSA. In addition, Defendants' serial plaintiff argument is frivolous and therefore without merit. As such, the Motion for Summary Judgment must be denied.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

Kevin Hagenstad is an officer and owner of E.W. Ventures, Inc. (Hagenstad Decl., ¶ 3, DE-28-2.) On December 1, 2006, E.W. Ventures entered into an Asset Purchase Agreement with Page Holdings, Inc., a non-party to the litigation, whereby E.W. Ventures agreed to purchase the assets and related properties of two dry cleaning drop-stores and a dry cleaning plant. (*See* Asset Purchase

Agreement, p.1, DE-28-7.) Plaintiff Louise Exime, then an employee of Page Holdings, worked at the dry cleaning plant throughout the Defendants' dealings. (*See* Hagenstad Dep., pp.26-27.) The Asset Purchase Agreement was fully executed on or around April 23, 2007 (the "Closing Date"), at which time Defendants continued the operation of the drop stores and dry cleaning plant. (*See* Hagenstad Dep., p.17; Plaintiff's Statement of Facts, ¶ 3, DE-32.) On the Closing Date, or shortly thereafter, Ms. Exime became an employee of E.W. Ventures (*See* Hagenstad Dep., pp.26-27; Hagenstad Decl., ¶ 2; Plaintiff's Statement of Facts, ¶ 3.)

In addition to Ms. Exime, Defendants employed other workers, at both the drop stores and dry cleaning plant, who served as storefront personnel, assemblers, drivers, clothing pressers, and clothing cleaners. (Hagenstad Dep., pp.19, 26-27, 34.) While the total number of Defendants' employees is unclear, the record demonstrates that Ms. Exime worked with approximately 16 co-workers at the dry cleaning plant. *Id.*, p.25. Defendants' employees, inclusive of Ms. Exime, regularly handled business equipment, such as dry cleaning machines, pressing machines, boilers, vans, and cleaning chemicals in performing their daily duties.[1] (Hagenstad Dep., pp.19, 22-23, 27, 34, 36; Hagenstad Decl., ¶¶ 5, 10; Exime Dep., pp.22-26, DE-32-3.) While E.W. Ventures purchased most, if not all, of these materials from local retailers (*see* Hagenstad Dep., pp.19-23; Hagenstad Decl., ¶¶ 8-9.), Plaintiff contends that the vast majority of Defendants' equipment was manufactured outside Florida state.[2] (*See* Manufacturers' Website Printouts, DE-31, Exhibits B-H.) It is undisputed, however, that Defendants' dry cleaning business served only Florida customers. (Hagenstad Decl., ¶ 11.)

Defendants' gross sales approximated $90,659.00 in 2006. (Defendants' 2006 Income Tax Return, DE-31-2.) In addition, *through the first three quarters of 2007*, Defendants' gross sales approximated $535,964.92: (1) $33,703.70 in the first quarter of 2007; (2) $237,777.23 in the second

---

[1] Plaintiff's duties included daily operation of a shirt pressing machine. Approximately 7-10 of Defendants' plant employees also worked as shirt pressers. Defendant Hagenstad, along with his wife, acted as manager and supervisor of the entire dry cleaning operation. (*See* Exime Dep., pp.19-22; Hagenstad Decl., ¶ 10; Hagenstad Dep., pp.25, 41.)

[2] For example, in his deposition testimony, Defendant Hagenstad acknowledged that the plant's Fuji Star shirt pressing machines were manufactured in Japan. (Hagenstad Dep., pp.22-23.)

quarter of 2007; and (3) $264,483.99 in the third quarter of 2007. (Defendants' 2007 Profit and Loss Statements, DE-31-2.) While Defendants failed, through discovery, to provide Plaintiff with sales figures for the fourth quarter of 2007, the record demonstrates that Defendants' total gross sales in 2007 was approximately $785,000.00.[3] (*See* Hagenstad Dep., pp.56-57.)

Plaintiff's employment with E.W. Ventures terminated in or around October 2007. (Hagenstad Decl., ¶ 14; Exime Dep., p.58.) On January 24, 2008, Plaintiff filed her one count Complaint against Defendants alleging overtime violations under the FLSA [DE-1]. On March 11, 2008, Defendants filed an answer which asserted, as its first affirmative defense, Plaintiff's failure to demonstrate FLSA enterprise jurisdiction [DE-12]. On September 24, 2008, Defendants filed a Motion for Summary Judgment [DE-28]. That Motion is fully briefed and ripe for adjudication.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue as to any material fact and compels judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (*quoting Anderson*, 477 U.S. at 251-52)).

In opposing a proper motion for summary judgment, the non-moving party may not rely solely on

---

[3] Therefore, Defendants' gross sales approximated $249,035.08 in the fourth quarter of 2007.

the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

### III. FLSA ENTERPRISE COVERAGE

Plaintiff must prove individual *or* enterprise coverage to invoke the FLSA overtime provisions. *See Galdames v. N&D Investment Corp.*, 2008 WL 4372889, * at 3 (S.D. Fla. 2008). Thus, to prevail on summary judgment, Ms. Exime must demonstrate that: (1) she was "engaged in commerce or in the production of goods for commerce" [individual coverage]; or (2) that she was employed in an enterprise "engaged in commerce or in the production of goods for commerce" [enterprise coverage].[4] *See* 29 U.S.C. § 207(a)(1).

For purposes of FLSA enterprise coverage, the relevant provisions are set forth in 29 U.S.C. § 203(s)(1)(A) and 29 C.F.R. § 779.238:

> "Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise that-
>
> [H]as employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods *or materials* that have been moved in or produced for commerce by any person;[5] and
>
> [I]s an enterprise whose annual gross volume of sales made or business done is not less than

---

[4] As Plaintiff apparently concedes the absence of individual FLSA coverage, the Court need not address that issue. *See Galdames*, 2008 WL 4372889, * at 3 (enterprise coverage sufficient for FLSA jurisdiction).

[5] Prior to a 1974 Congressional amendment adding the words "*or materials*," the statute simply stated that:

> "Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise which has employees engaged in commerce or in the production of goods for commerce, including employees handling, selling or otherwise working on *goods* that have been moved in or produced for commerce by any person...*See generally Marshall v. Whitehead*, 463 F. Supp. 1329, 1336-1337 (M.D. Fla. 1978) (discussing pre-1974 statute) (emphasis added).

Under both versions of the statute, the definition of "goods" excludes products delivered to an ultimate consumer, other than a producer, manufacturer, or processor thereof. *See* 29 U.S.C. § 203(i). The additional term "or materials," in the current statute, is left undefined.

$500,000...

29 U.S.C. § 203(s)(1)(A)(i)-(ii) (emphasis added).

... An enterprise described in [29 U.S.C. § 203(s)(1)] will be considered to have employees engaged in commerce or in the production of goods for commerce...if during the annual period which it uses in calculating its annual sales for purposes of the other conditions of these sections, it *regularly and recurrently* has at least two or more employees engaged in such activities. On the other hand, it is plain that an enterprise that has employees engaged in such activities only in isolated or sporadic occasions, will not meet this condition.

29 C.F.R. § 779.238 (emphasis added).

Given such language, courts approach enterprise coverage through a two-prong test: (1) the enterprise commerce requirement; and (2) the gross sales requirement. Each prong must be satisfied in order to invoke FLSA enterprise jurisdiction. *See Severin v. Pasha's Restaurants, Inc.*, 2007 WL 967021, * at 2 (S.D. Fla. 2007). As such, the Court addresses both prongs below.

### A. Enterprise Commerce Requirement

As noted above, a defendant employer, grossing in excess of $500,000, is subject to enterprise coverage where at least two employees engage in "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person." 29 U.S.C. § 203(s)(1)(A)(i). In addition, pursuant to 29 C.F.R. § 779.238, the employees must handle such goods or materials on a "regular and recurrent" basis. Here, Plaintiff contends that: (1) Defendants' business materials previously moved through interstate commerce; and (2) Defendants' employees regularly handled such interstate material, thereby satisfying the enterprise commerce requirement.

#### 1. "Goods or Materials" Previously Moved in Interstate Commerce

In response to Plaintiff's first contention that Defendants' business "materials" previously moved through interstate commerce, Defendants assert the "ultimate consumer" defense pursuant to 29 U.S.C. § 203(i) and § 203(s)(1)(A)(i). Those Sections, read in conjunction, provide that:

"Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise that...has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on *goods or materials* that have been moved in or produced for commerce by any person;

29 U.S.C. § 203(s)(1)(A)(i) (emphasis added).

5

> "Goods" means goods (including ships and marine equipment), wares, products, commodities, merchandise, or articles or subjects of commerce of any character, or any part or ingredient thereof, but does not include goods after their delivery into the actual physical possession of the *ultimate consumer* thereof other than a producer, manufacturer, or processor thereof.

29 U.S.C. § 203(i) (emphasis added).

Based on these statutory provisions, Defendants argue that summary judgment is warranted, as "ultimate consumers" of interstate "goods" are expressly exempt from FLSA enterprise jurisdiction.[6]

Defendants' argument, however, ultimately turns on the assumption that the terms "goods" and "materials" share the same statutory definition.[7] But, in order to accept Defendants' narrow interpretation, it would be necessary to wholly ignore the 1974 amendment to § 203(s)(1)(A)(i), as well as the accompanying Senate Report. That Report provides:

> The bill also adds the words "or materials" after the word "goods" [in § 203(s)(1)(A)(i)] to make clear the Congressional intent to include within this additional basis of coverage the *handling of goods consumed in the employer's business, as, e.g., the soap used by a laundry*...S. Rep. No. 93-690, 93rd Cong., 2nd Sess. at 17 (1974) (emphasis added).

Significantly, the specific example cited in the 1974 Senate Report, "*e.g., the soap used by a laundry*," demonstrates a clear Congressional intent to expand enterprise jurisdiction to companies whose employees handle interstate materials used in the employer's own business, *regardless of whether that employer is the ultimate consumer of those materials*. In other words, the additional term "materials" broadens FLSA jurisdiction by substantially constricting the "ultimate consumer" defense now asserted by Defendants. *See Whitehead*, 463 F. Supp. at 1337 (noting that 1974 amendment precludes "ultimate consumer" defense). Most, if not every, Circuit Court that has spoken on this issue has similarly construed the 1974 amendment as expanding enterprise coverage to virtually all employers, so long as

---

[6] There is no meaningful dispute that Defendants are "ultimate consumers" for purposes of § 203(i).

[7] Defendants contend that "there is no reason to interpret 'materials' in the statute any differently from the term 'goods.'" (Reply to Motion for Summary Judgment, p.6, DE-33.) Therefore, according to Defendants, the joint definition of "goods" and "materials" should exclude ultimate consumers, such as Defendants, from FLSA enterprise jurisdiction. *See* 29 U.S.C. § 203(i) (the term "goods" excludes ultimate consumers of interstate products for purposes of enterprise jurisdiction).

that employer satisfies the $500,000 gross sales requirement.[8] This statutory interpretation is also supported by numerous decisions arising within this Circuit. *See Dunlop v. Industrial America Corporation*, 516 F.2d 498, 500-502 (5th Cir. 1975) (ultimate consumer defense viable only prior to 1974 amendment);[9] *Galdames v. N&D Investment Corp.*, 2008 WL 4372889, * at 5 (S.D. Fla. 2008) (given 1974 amendment, "[i]t is notable how many courts in the past three-and-a-half decades have concluded that virtually any enterprise that meets the statutory [$500,000] gross sales requirement is subject to [enterprise coverage]."); *Daniel v. Pizza Zone Italian Grill & Sports Bar*, 2008 WL 793660, * at 1 (M.D. Fla. 2008) ("enterprise coverage embraces virtually every business whose annual gross volume of sales or business is $500,000..."); *Whitehead*, 463 F. Supp. at 1336-1337 (ultimate consumer defense "fails to take into consideration the specific addition of the words 'or materials'"); *see also* "Coverage of the Fair Labor Standards Act: What Connection With Commerce Brings an Employee Within the Coverage of the Fair Labor Standards Act?" 81 Fla. B.J. 77, 78 (June 2007) ("[u]nder the liberal authority of cases decided on facts occurring after the effective date of the 1974 amendment, it is difficult to conceive of a business with the requisite dollar volume of business that would not be found to be an enterprise within the meaning of §203(s)(1)(A)(i)"); Wage and Hour Law: Compliance and Practice, Chapter 4 § 30, West Publishing Company 2008 (in light of 1974 amendment, "[f]or practical purposes, all businesses now meet the commerce test of enterprise coverage.").

Despite such authority, Defendants raise various arguments to support the continued viability of the "ultimate consumer" defense. First, Defendants contend that this Court must disregard § 203's

---

[8] As noted above, courts in sister Circuits have similarly interpreted the effect of the 1974 amendment. *See Dole v. Odd Fellows Home Endowment Bd.*, 912 F.2d 689, 695 (4th Cir. 1990); *Donovan v. Pointon*, 717 F.2d 1320, 1322-1323 (10th Cir. 1983) ("[t]he fact that [defendant] may have himself acquired the goods and materials...from sources within the state of Oklahoma is irrelevant to a determination of whether [defendant] is a covered employer...[t]he critical issue is whether the goods or materials handled by [defendant] and his employees had moved in interstate commerce"); *Marshall v. Brunner*, 668 F.2d 748, 751-752 (3rd Cir. 1982); *Donovan v. Scoles*, 652 F.2d 16, 18 (9th Cir. 1981); *see also Archie v. Grand Central Partnership, Inc.*, 997 F. Supp. 504, 529-530 (S.D. NY. 1998) ("[t]his amendment adding the words 'or materials' leads to the result that virtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA.") (citation omitted); *Radulescu v. Moldowan*, 845 F. Supp. 1260, 1264 (N.D. Ill. 1994); *Dole v. Bishop*, 740 F. Supp. 1221, 1226 (S.D. Miss. 1990); *Jones v. Cadillac Condominium Association, Inc.*, 1989 WL 49156, * at 5 (D. Colo. 1989); *Marshall v. J.D. Davis*, 526 F. Supp. 325 (M.D. Tenn. 1981); *Marshall v. West County Disposal, Ltd.*, 1980 WL 2192 (E.D. Mo. 1980).

[9] Decisions of the Fifth Circuit, prior to September 30, 1981, are binding precedent on the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

legislative history. *See Bedroc Ltd. v. United States*, 541 U.S. 176, 186 (2004) (legislative history not appropriate where plain meaning of statute is clear). Contrary to such argument, however, the Eleventh Circuit expressly instructs that such historical analysis is necessary to solve statutory ambiguity. *See U.S. v. Fields*, 500 F.3d 1327, 1330 (11th Cir. 2007) ("In the absence of any plain meaning of the statutory language, we look to the legislative history of the statute to determine whether Congress provided any guidance concerning its intent").

Here, in the absence of the 1974 Senate Report, the meaning of the term "or materials" is ambiguous. On one hand, it is plausible that Congress intended "goods" and "materials" to share the same operative definition. Such an interpretation, however, would completely nullify the 1974 amendment, as the phrase "or materials" would be mere surplusage. *See Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1204-1205 (11th Cir. 2007) (failure to give effect, if possible, to every word and clause violates rule of statutory construction). In addition, the statutory definition of the term "goods" expressly *excludes* all items delivered to an ultimate consumer. *See* 29 U.S.C. § 203(i). On the other hand, Merriam-Webster's Dictionary defines "materials" as "*relating to, derived from, or consisting of matter.*" Merriam-Webster's Dictionary, Tenth Edition, p.717. Thus, the plain meaning of "materials" is not limited by an ultimate consumer exclusion. As such, it is equally plausible that the term "materials" is significantly broader than the term "goods." Given the ambiguity, and in light of the Eleventh Circuit's direction in *Fields*, this Court must consider § 203's legislative history. *See Fields*, 500 F.3d at 1329-1330.

Defendants also cite the following case law to support their narrow interpretation of § 203(s)(1)(A)(i) and to minimize the jurisdictional implications of the 1974 amendment, namely: *Dunlop v. Industrial Am. Corp.*, 516 F.2d 498 (5th Cir. 1975); *Thorne v. All Restoration Services, Inc.*, 448 F.3d 1264,1267 (11th Cir. 2006); *Scott v. K.W. Max Investments, Incorporated*, 256 Fed. Appx. 244, 248 (11th Cir. 2007); *Navarro v. Broney Automotive Repairs, Inc.*, 533 F. Supp. 2d 1223 (S.D. Fla. 2008); *Bien-Aime v. Nanak's Landscaping, Inc.*, 572 F. Supp. 2d 1312, 1317 (S. D. Fla. 2008); *Polycarpe v. E&S*

8

*Landscaping Service, Inc*, 2008 WL 3866498 (S.D. Fla. 2008); *Milbourn v. Aarmada Protection Systems 2000, Inc.*, 2008 WL 5044550, * at 4-5 (S.D. Fla. 2008); *Monelus v. Tocodrian, Inc.*, Case No: 07-61801-WPD-DE-40; *Velasquez v. All Florida Security Corp.*, Case No: 07-23159-JLK-DE-25. This precedent, however, is distinguishable for a number of reasons. For example, *Thorne* and *Navarro* are inapplicable, because they merely dealt with *individual* FLSA coverage. The *Dunlop* decision stands for the narrow proposition that employers could properly raise the ultimate consumer defense, *prior* to the 1974 amendment to § 203(s)(1)(A)(i).[10] See *Dunlop*, 516 F.2d at 502 ("prior to its amendment in 1974 the Fair Labor Standards Act did not reach enterprises which provided only services...and did not pass on any goods obtained from interstate commerce"). Finally, *Scott, Bien-Aime, Polycarpe, Milbourn, Monelus,* and *Velasquez* do not consider § 203's legislative history, and more specifically, the 1974 Senate Report.[11] In short, and despite Defendants' countervailing arguments, the Court has determined that the "ultimate consumer" defense has been significantly constricted by the 1974 amendment to § 203(s)(1)(A)(i), as clarified by the corresponding legislative history. Thus, the enterprise commerce test, quite simply, embraces all businesses whose employees regularly handle materials previously moved across inter-state lines.

Turning to the operative facts in this matter, it is undisputed that Defendants employed multiple workers to clean, press, and deliver clothing and to serve as storefront personnel. (Hagenstad Dep., pp.19, 26-27, 34; Hagenstad Decl., ¶ 10.) The record demonstrates that these employees, inclusive of Ms. Exime, daily used business materials, inclusive of cleaning chemicals, vehicles, pressing machines, cleaning machines, boilers, and dryers to perform their jobs. (Hagenstad Dep., pp.19, 22-23, 27, 34, 36; Hagenstad Decl., ¶¶ 5, 10; Exime Dep., pp.22-26.) Moreover, Plaintiff has presented evidence that, in

---

[10] The *Dunlop* court also recognized that the 1974 amendment expanded FLSA jurisdiction to include ultimate consumer defendants. *See Dunlop*, 516 F.2d at 502; *see also Whitehead*, 463 F. Supp. at 1338 (the *Dunlop* court "indicated that its interpretation of the effect of the amended Section 3(s) would extend coverage of the Act to employers...who conduct a wholly intrastate business, but whose employees, in the course of that business, use and handle any products...moved in interstate commerce, even though the products are purchased locally").

[11] Thus, while *Bien-Aime, Polycarpe, Milbourn, Monelus,* and *Velasquez* implicitly reject the necessity of analyzing § 203's legislative history, the ambiguity as to the precise meaning of "or materials," in conjunction with the term "goods," cannot be reconciled based solely on the plain language of the statute.

addition to the Fuji Star shirt pressing machines manufactured in Japan, Defendants' boiler, legger, puffer, dryer, pressing machines, and cleaning machines, were also manufactured outside Florida, and therefore previously moved across interstate lines.[12] (*See* Manufacturers' Website Printouts, DE-31, Exhibits B-H.) Thus, Defendants' employees appear to have handled interstate "materials" in performing their daily job functions, in satisfaction of 29 U.S.C. § 203(s)(1)(A)(i).

### 2. "Regular and Recurrent" Use of Interstate Material

In addition to the interstate nexus requirement, Plaintiff must also demonstrate that Defendants' employees handled interstate material on a "regular and recurrent" basis. *See* 29 C.F.R. § 779.238. Thus, § 779.238 limits the broad jurisdictional scope of § 203(s)(1)(A)(i), to those employers regularly using interstate material in the normal course of business. *See Galdames*, 2008 WL 4372889, * at 3 (isolated use of interstate material not sufficient to confer enterprise jurisdiction); *see also Scott*, 256 Fed. Appx. at 248 (single purchase of lumber in Louisiana deemed "isolated and sporadic," and therefore insufficient for purposes of enterprise jurisdiction).

Here, Ms. Exime operated a shirt pressing machine on a daily basis and also worked in close proximity with approximately 16 plant employees. (*See* Exime Dep., pp.19-22; Hagenstad Decl., ¶ 10; Hagenstad Dep., pp.25, 41.) These employees regularly used various cleaning equipment, or shared Ms. Exime's daily duties on the Japanese shirt pressing machines. (*See* Hagenstad Dep., pp.19, 22-23, 27, 34, 36; Hagenstad Decl., ¶¶ 5, 10; Exime Dep., pp.22-26.) In addition, there is record evidence of employees routinely driving delivery vans and regularly purchasing business supplies with a company credit card. (*See* Hagenstad Dep., pp.36-38.) Finally, as noted above, Plaintiff may be able to present additional evidence that the majority of these business materials previously moved through interstate commerce. (*See* Manufacturers' Website Printouts, DE-31, Exhibits B-H.) Accordingly, the record demonstrates

---

[12] While challenging the admissibility of the website evidence, Defendants do not dispute Plaintiff's specific contention that the majority of Defendants' dry cleaning equipment previously moved through interstate commerce. As noted above, Defendants concede that the Fuji Star shirt pressing machines were manufactured in Japan. (*See* Hagenstad Dep., p.22-23.) Therefore, Plaintiff will have the opportunity to present additional, admissible evidence pertaining to the interstate nature of Defendants' remaining business materials at the time of trial.

that Defendants' employees "regularly and recurrently" used business materials in performing their essential job functions, in satisfaction of 29 C.F.R. § 779.238.

Defendants' case law is not persuasive on this issue. *See Scott*, 256 Fed. Appx. at 248; *Sandoval v. Florida Paradise Lawn Maintenance, Inc.*, 2008 WL 1777392, * at 6-7 (S.D. Fla. 2008). For example, *Scott* involved a single purchase of interstate lumber, which the Eleventh Circuit deemed insufficient under the "regular and recurrent" standard. *See Scott*, 256 Fed. Appx. at 248 ("[t]he purchase of lumber from Louisiana constitutes just such an isolated incident"). Likewise, in *Sandoval*, the plaintiff failed to present *any* evidence of employees handling interstate material. *Sandoval*, 2008 WL 1777392, * at 7 ("[p]laintiffs, however, have not offered any evidence in support of this prong of enterprise coverage"). Here, on the other hand, Defendants purchased essential cleaning, pressing, and delivery equipment manufactured outside Florida state, which Defendants' employees used, on a daily basis, to operate the dry cleaning business. (Hagenstad Dep., pp.19, 22-23, 27, 34, 36; Hagenstad Decl., ¶¶ 5, 10; Exime Dep., pp.22-26.) Given the factual differences, Defendants' case law is not controlling. Accordingly, summary judgment must be denied as to this issue.

**B.     Gross Sales Requirement**

Under the second test for FLSA enterprise jurisdiction, Plaintiff must prove that Defendants' annual gross sales exceeded $500,000. *See* § 203(s)(1)(A)(ii); *see also Severin*, 2007 WL 9677021, * at 2 (S.D. Fla. 2007). Here, Defendants' alleged overtime violations occurred in 2007. (*See* Hagenstad Dep., pp.26-27; Hagenstad Decl., ¶ 2; Plaintiff's Statement of Facts, ¶ 3.) As noted above, Defendants' gross sales in 2007 approximated $785,000.00: (1) $33,703.70 in the first quarter of 2007; (2) $237,777.23 in the second quarter of 2007; (3) $264,483.99 in the third quarter of 2007; and (4) approximately $249,035.08 in the fourth quarter of 2007. (*See* Defendants' 2007 Profit and Loss Statements, DE-31-2; Hagenstad Dep., pp.56-57.) Thus, on the face of Plaintiff's evidence, the annual gross sales requirement for 2007 is satisfied. *See Thompson v. Robinson*, 2007 WL 2714091, * at 4 (M.D. Fla. 2007) (for purposes of gross sales requirement, court calculates gross sales for entire year

during which plaintiff was employed).

In opposition to this evidence, Defendants argue for application of the "rolling quarters" accounting method, pursuant to 29 C.F.R. § 779.266. That regulation provides, in relevant part:

> (a) No computations of annual gross dollar volume are necessary to determine coverage or exemption in those enterprises in which the gross receipts regularly derived each year from the business are known by the employers to be substantially in excess or substantially under the minimum dollar volume specified in the applicable provision of the Act....Nor is it required where the enterprise or establishment has not yet in such current year exceeded the statutory amount in its gross volume of sales or business, if it has had, in the most recently ended year used by it for income tax purposes, a gross volume of sales made and business done in excess of the amount specified in the Act. In such event, the enterprise or establishment will be deemed to have an annual gross volume in excess of the statutory amount unless the employer establishes, through use of the method set forth in paragraph (b) of this section, an annual gross volume of sales made or business done which is less than the amount specified in the Act...
>
> (b) In order to determine, when there may be doubt, whether an enterprise or establishment has an annual gross volume of sales made or business done in excess of the amount specified in the statute, and analysis will be made at the beginning of each quarter-year so that the employer will know whether or not the dollar volume tests have been met for the purpose of complying with the law in the workweeks ending in the current quarter-year. The total of the gross receipts from all its sales or business during a 12-month period which immediately precedes the quarter-year being tested will be the basis for analysis...

The specific calculation under the rolling quarters method is set forth in *Donovan v. I-20 Motels, Inc.*, 664 F.2d 957, 958 (5th Cir. 1981), where the court stated:

> Under [the rolling quarters method], an employer determines if it is covered by the Act at the beginning of each quarter, by calculating its annual dollar volume based on the sum of the four preceding quarters. In other words, on April 1, 1981, the employer totals his gross volume of sales for the year ended March 31, 1981. If the total exceeds [the gross sales requirement] he is covered by the Act for the next quarter; if not, he is exempt from the Act.[13] (citations omitted).

---

[13] The record demonstrates that Ms. Exime worked at the dry cleaning plant during the first three quarters of 2007. (*See* Plaintiff's Statement of Facts, ¶ 3; Response to Motion for Summary Judgment, p.16 n.8, DE-31.) As such, according to Defendants:

> [T]he pertinent time period to determine whether the corporate Defendant had $500,000 in annual gross sales volume [under the rolling quarters method] is [1] the whole calendar year of 2006 (to determine coverage for...the first quarter of 2007), [2] last three quarters of 2006 and the first quarter of 2007 (to determine coverage for the second quarter of 2007), and [3] the last two quarters of 2006 and the first two quarters of 2007 (to determine coverage for the third quarter of 2007). (Motion for Summary Judgment, p.16.)

Thus, under the rolling quarters method, Defendants would not meet the gross sales requirement in the first quarter of 2007, as gross sales for the preceding four quarters totaled approximately $90,659.00. Similarly, Defendants would not meet the gross sales requirement in the second quarter of 2007, as gross sales for the preceding four quarters totaled approximately $124,362.70. Defendants would also not meet the gross sales requirement in the third quarter of 2007, as gross sales for the preceding four quarters totaled approximately $362,435.11. Significantly, Defendants would satisfy the gross sales requirement only in the fourth quarter of 2007, as gross sales for the preceding four quarters totaled approximately $608,919.10. Therefore, assuming the applicability of the rolling quarters method, Defendants would not be subject to enterprise jurisdiction during the first *three* quarters of 2007, the specific time period of the alleged overtime violations.

While well-taken, Defendants' argument misses the mark. Under the express language of § 779.266(a), the rolling quarters method is a regulatory tool to determine whether a defendant employer, *who once met the gross sales requirement in the previous year,* continues to be subject to enterprise coverage in the following year. *See Donovan,* 664 F.2d at 958 ("the rolling quarters method is a way of determining currently whether a business once covered by the Act continues to be subject to it"). Here, there is no dispute that Defendants *failed* to meet the annual gross sales requirement in 2006, the year preceding Ms. Exime's employment. Thus, contrary to Defendants' argument, there is simply no need, or authority, to apply the rolling quarters method to any financial quarter in 2007.[14] *See Thompson v. Robinson,* 2007 WL 2714091, * at 4 (M.D. Fla. 2007) (calculating gross sales during years of plaintiff's employment, without use of rolling quarters method); *Francois v. Fried Green Tomatoes, Inc.,* 2008 WL 4755667, * at 2 (11th Cir. 2008) (same) (unpublished). As such, Defendants meet the gross sales requirement in 2007, and accordingly, summary judgment must be denied as to this issue.

## IV. Hagenstad's Individual Liability

Defendants next contend that "to the extent that the Court finds that the corporate Defendant is subject to suit, Hagenstad's liaiblity is only derivative to that of the corporate Defendant's...and therefore Hagenstad is entitled to summary judgment." Despite such argument, however, the Eleventh Circuit has recognized that "[t]he overwhelming weight of authority is that a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.,* 515 F.3d 1150, 1160 (11th Cir. 2008) (citation omitted). To qualify as an "employer" subject to liability,

---

[14] Defendants cite *Burnley v. Short,* 730 F.2d 136 (4th Cir. 1984) for the proposition that the Court maintains the discretion to use the rolling quarters method as the *default* method for calculation. Specifically, Defendants point to the *Burnley* court's observation that the "rolling quarters method should be used by the court unless its application would make FLSA coverage 'more speculative, constantly fluctuating or predictably unfair.'" *Id.* at 139.

Here, even if the Court were to consider *Burnley* authoritative, the rolling quarters method would make FLSA coverage "more speculative" because the Defendants would be exempt from enterprise coverage for the first three quarters of 2007, but subject to enterprise coverage in the fourth quarter of 2007. However, the use of Defendants 2007 Profit and Loss Statements would simply subject Defendants to FLSA coverage for the *entire* year of 2007, without any fluctuation in coverage. As such, even under *Burnley,* the rolling quarters method is simply not the appropriate, or most predictable, method of calculation in this matter.

the officer "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *See id.*

Here, the record demonstrates that Defendant Hagenstad managed day-to-day operations of the dry cleaning business and supervised Ms. Exime. (*See* Hagenstad Dep., p.67, "Q: [W]ho has been responsible for running the day-to-day operations of the company? A: Myself and my wife. Primarily myself."; Hagenstad Decl., ¶ 10.) As such, Defendant Hagenstad is potentially subject to joint and several liability with the corporate Defendant under the FLSA overtime provisions. *See Galdames*, 2008 WL 4372889, * at 6 (rejecting identical argument on identical grounds).

### V. <u>Improper Serial Plaintiff</u>

Defendants' final argument is that Ms. Exime, and her Counsel, are improper "serial plaintiffs." In support of this contention, Defendants note that in 2003 Ms. Exime initiated an FLSA suit against her former employer, Page Holdings, Inc. *See Exime v. Drycleaning & Laundry Express, Inc.*, Case No: 03-61547-Civ-Marra. In addition, Defendants allege that Ms. Exime has "manufactur[ed] a claim for overtime" and has engaged in "fact creation." (Motion for Summary Judgment, p.20.) Further still, Defendants claim that Plaintiff's Counsel has a history of "drumming up...lawsuits." (Reply to Motion for Summary Judgment, p.10, DE-33.)

Quite simply, Plaintiff's prior lawsuit, against different defendants, does not support a claim of unethical conduct in the instant matter. Thus, one lawsuit filed five years ago, which settled the following year, does not, in the most generous stretch of the imagination, constitute a "serial" plaintiff, even when considered within the context of Defendants' cited authorities. In short, the argument borders on being a misrepresentation of the law. Furthermore, it is troubling that Defendants question the character of Ms. Exime and her Counsel in signed pleadings, yet offer no evidence to support their theory. Therefore, based on the record before the Court, Defendants' allegations are without merit.

Hopefully, Counsel's breach of professionalism in this pleading will not be repeated.[15]

## VI. CONCLUSION

Accordingly, for the reasons stated above, it is hereby

ORDERED THAT

(1)     Defendants' Motion for Summary Judgment [DE-31] is DENIED. Ms. Exime may pursue her overtime claim against Defendants from the start-date of her employment with E.W. Ventures, in or around April 23, 2007, through her October 2007 departure.

(2)     Pursuant to Rule 1 of the Magistrate Rules of the Southern District of Florida, the Parties shall conduct a Settlement Conference before Magistrate Judge O'Sullivan on **January 30, 2009 at 10:30 a.m**. The Parties shall contact Judge O'Sullivan's chambers, at (305) 523-5920, for further details regarding the Settlement Conference no later than **January 9, 2009**.

DONE AND ORDERED in Miami, Florida, this 23rd day of December, 2008.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:
Magistrate Judge O'Sullivan
All Counsel of Record

---

[15] Portions of the Motion for Summary Judgment and Reply Memorandum appear "copy-pasted," from Defendants' Counsel's previous motion for summary judgment and reply memorandum filed in a prior case before Judge Altonaga. *See Milbourn v. Aarmada Protection Systems 2000, Inc., et al.*, Case No: 08-60269-Civ-CMA. Counsel's recycling is evidenced by various misreferences to defendants *Aarmada, Jackson,* and *Maharaj* in the Reply brief. (*See* Reply, pp.9-10 [DE-33].) It is hoped that the client benefitted from this cost-saving technique. In any event, the obvious practice suggests something similar to the "pot calling the kettle black." *See Bruno v. Scarkino*, 1993 WL 302717, * at 1 (E.D. La. 1993) (rejecting motion for sanctions in "clear case of the 'pot calling the kettle black'").